[No. 1872.]

### LAWRENCE LOTT v. THE STATE.

THEFT — FACT CASE.— Though under the law of this State asportation of the property is not essential to complete theft, there must have been an actual fraudulent taking of the property, and it must have passed into the possession of the thief. See the statement of the case for evidence *held* insufficient to support a conviction for theft because it fails to show a taking of the property by the accused.

APPEAL from the District Court of Wilson. Tried below before the Hon. George McCormick.

· The conviction in this case was for the theft of two horses, the property of W. A. Clark, in Wilson county, Texas, on the 1st day of July, 1884. The penalty assessed against the appellant was a term of five years in the penitentiary.

W. A. Clark was the first witness for the State. He testified that he lived in Gonzales county, Texas, in 1884. During the month of February of that year two mares of his disappeared from the range. One was a bay animal and the other a brown; one was branded H. F. connected, and the other H. E. connected. Defendant was at the witness's house in March, 1884, and while there asked if witness knew the owner of two animals of the above description, stating that two such were running with a stock of horses in Wilson county belonging to Mrs. Crain. Witness informed the defendant that he owned the animals described; that they were saddle animals, and that they disappeared from their range during the preceding month. Witness remarked then that he would soon go to Wilson county after them. Defendant answered that he would help the witness recover them. Very soon after this conversation the witness was called to the State of Colorado, and did not go to Wilson county after his mares until his return from Colorado in June following. He then learned that the defendant had disposed of his two mares. Witness had never seen the mares since they disappeared from the range, and at no time had he seen them in the possession of the defendant.

Evan Roberts testified that he lived in Wilson county, and for six years past had been in charge of Mrs. Crain's horse stock. In February, 1884, two mares of the description of those mentioned in the indictment began to run with a bunch of Mrs. Crain's horses, on the range near the defendant's house. Some time afterwards defendant left word at witness's house that he wanted to sell witness

two mares then running with Mrs. Crain's horses. Witness afterwards met the defendant, who sold to witness the two mares at $20 each. Witness paid him $40 in money, and received his bill of sale which he, defendant, wrote and signed himself in the presence of the witness. The mares at the time were on the range in Wilson county. Defendant executed the bill of sale in Wilson county, Texas, delivered it to witness there, and authorized witness to take possession of the mares. Witness at the time of this transaction was purchasing horses for Mr. Ragsdale, of San Antonio, for the northern market. Shortly after this purchase he delivered the mares to Mr. Ragsdale in San Antonio.

The State next read in evidence the bill of sale executed by defendant to Roberts, and closed. The defense introduced no evidence.

The motion for new trial raised the question discussed.

*Fly, Davidson & Davidson* and *T. W. Hankinson,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

HURT, JUDGE. This is a conviction for theft of horses. From the statement of facts we find that two mares, suiting the description of those alleged to belong to the prosecutor Clark, were running in the range with the stock of Mrs. Crain within about two miles of defendant's house. That with full knowledge that they belonged to Clark, and fraudulently and without his consent, appellant sold said mares to one Evan Roberts, executing a bill of sale thereto to Roberts.

As in Hardeman's case, so in this, there is no evidence tending remotely to prove that appellant was ever in possession of the property; but on the contrary it appears that he was *not* at any time.

By the definition of theft, under our Code, there must be a taking of the property, and this must be a fraudulent taking, by some person. In the case in hand *defendant* did not *take* the mares at all, and if there was a taking by Roberts evidently it was not fraudulent, for he bought and paid for the property. (Penal Code, arts. 724, 726; *Hardeman* v. *The State,* 12 Texas Ct. App., 207; *McAfee* v. *The State,* 14 Texas Ct. App., 668.)

The general doctrine applicable to larceny at common law, and to theft or larceny in most if not all of the States, is that there can be no larceny — theft — without trespass. Mr. Bishop says: "THE TRESPASS — *General Doctrine.*— It is a rule, rather technical than

resting on any clear reason, that there can be no larceny without a trespass. Now, this rule, though it seems at the first impression to be very simple, is in its results one of the principal things to be considered under this title Larceny. There are so many varying circumstances in which some sort of legal relation subsists between the wrong-doer and the owner of the property,— so many in which persons misappropriate property to which, or to the owners of which, they do not stand as entire strangers,— raising nice points as to whether there has been a trespass or not, that, out of this doctrine of trespass, grows a vast amount of law, with almost countless legal decisions. And, as we travel over this line of legal doctrine and decision, we shall see that the courts in expounding the rule have established some technical limitations and distinctions not less nice and refined than the rule itself."

And continuing upon this subject under the sub-head " *When not larceny, some-other crime — Embezzlement — Cheat — False pretenses,* etc.,— he says: " It was, as the reader knows, to make punishable acts of misappropriation where there was no trespass, that the statutes against embezzlement were passed ; and as those statutes have been found from time to time defective, they have been amended, and their scope has been enlarged. So, to meet certain other cases of fraudulent obtaining and using property to which he who practices the fraud is not entitled, we have the common law doctrine of cheat, and the statutes against obtaining money or goods by false pretenses. And there are known to the law some other offenses, the gist of which, perhaps, is the wrong-doer's getting into his possession, under special circumstances, and misusing for his own benefit or to another's injury, property to which he is not entitled. If, therefore, there is no larceny where there is no trespass, it does not follow that there is no offense." (Bish. Crim. Law, vol. 2, §§ 799, 800.)

Now, while in this State there need be no asportation, still there must be a taking,— the property must have been in the possession of the thief. (Penal Code, art. 726.)

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered February 3, 1886.]